E-FILED
Wednesday, 15 April, 2026  11:45:52 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ALONZO C. DECARLO,<br>        Plaintiff, | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) | Case No. 25-cv-3295 |
| LINCOLN LAND COMMUNITY<br>COLLEGE,<br>        Defendant. | ) <br> ) <br> ) <br> ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Lincoln Land Community College's ("LLCC" or the "College") Motion to Dismiss Plaintiff Alonzo C. DeCarlo's First Amended Complaint. (Doc. 10). Plaintiff, a Black man, "was employed by LLCC as a probationary faculty member and taught both in-person and online courses over seven academic semesters." (Doc. 9 at ¶¶ 1, 20). He alleges LLCC subjected him to discriminatory treatment based on his race and engagement with protected activities and was ultimately forced to resign from his position at the College. (*Id.* at 4).

Specifically, Plaintiff contends he was denied materials explaining the College's evaluation standards of him and that his college course was subjected to an audit following a student's complaint. Additionally, Plaintiff claims his conduct concerning a "syllabus issue" was mischaracterized and contributed to a "disciplinary narrative" of "insubordination." (*Id.* at ¶¶ 5–18). Plaintiff raised his concerns of racial discrimination

at a meeting attended by his union representative, the Dean of Social Sciences and Business, and the Vice President of Academic Services. (*Id.* at ¶¶ 13–14, 19–20).

Thereafter, according to Plaintiff, "promised follow-up meetings did not occur, administrative scrutiny intensified, and LLCC denied [him] tenure." (*Id.* at ¶ 22). He alleges "[t]he decision to deny tenure relied entirely on [his] online teaching, despite the limited number of written evaluations and [his] repeated efforts to obtain guidance and improve." (*Id.* at ¶ 23). He further states, "No intervening performance deficiencies were identified," and "the stated reasons for denial were inconsistent with prior evaluations and contemporaneous acknowledgments." (*Id.* at ¶ 25).

## I.  DISCUSSION

### A. Exhaustion of Administrative Remedies

As a preliminary matter, before a plaintiff can bring any Title VII claim, he "must first exhaust his administrative remedies by filing charges with the [Equal Employment Opportunity Commission ("EEOC")] and receiving a right to sue letter." *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025) (citations and quotation omitted). After receiving the letter, a plaintiff has 90 days to file suit. *Prince v. Stewart*, 580 F.3d 571, 573–74 (7th Cir. 2009). The "subsequent judicial proceedings [are] limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

The First Amended Complaint does not contain any allegations that Plaintiff filed charges with the EEOC or received a right to sue letter. That deficiency alone warrants

dismissal. *Anderson*, 140 F.4th at 390. Plaintiff's response to the Motion to Dismiss, however, states that he filed a charge with the EEOC alleging race discrimination and retaliation, received a right to sue letter, and filed this action within 90 days of his receipt. Accordingly, the Court grants Plaintiff leave to file a second amended complaint to properly allege his exhaustion of administrative remedies. However, the Court will address the present allegations to provide Plaintiff an opportunity to cure any other deficiencies identified below.

### B. Applicable Legal Standard on Rule 12(b)(6) Motion to Dismiss

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* The claim to relief must be "plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *Twombly*, 550 U.S. at 555 (quotation omitted) (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability," its claim to relief falls short of plausibility. *Iqbal*, 556 U.S. at 678 (quotation omitted). In other words, the complaint "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Complaints filed *pro se* are liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but are not excused from

Rule 8(a)'s pleading requirements. *See Pearle Vision, Inc. v. Room*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeal v. United States*, 508 U.S. 106, 113 (1993)).

## C. Race Discrimination

Plaintiff brings a claim for race discrimination under Title VII. *See* 42 U.S.C. § 2000e-2(a). In the context of employment discrimination generally, at the pleading stage "a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (citation omitted). A court must be able to draw a "*plausible* inference that the adverse action suffered was connected to [Plaintiff's] protected characteristics." *Id.* at 777 (citations omitted). The Seventh Circuit has explained that "[a] litigant's best shot at stating a plausible employment discrimination claim is to explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because of* her membership in a protected class." *Id.* at 777–78 ("[I]n the employment discrimination context, avoiding dismissal requires a plaintiff to describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and to allege a right to relief above a speculative level." (internal quotation marks omitted)).

Plaintiff did so here when he alleged:

Plaintiff is informed and believes, and therefore alleges, that similarly situated non-Black faculty members teaching online courses within the same division, subject to the same Collective Bargaining Agreement, and supervised by the same administrative chain received student complaints during the relevant period but were not subjected to course audits, heightened scrutiny, or adverse evaluative action. Those faculty members

retained their positions and progressed through probationary review without selective audits.

(Doc. 9 at ¶ 14). LLCC contends the totality of the complaint lacks factual support to provide Defendant with fair notice of the basis of Plaintiff's claim, how any alleged adverse conduct was based on race, and/or what the discriminatory conduct is at all. However, "evidence is not required at the pleading stage." *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 827 (7th Cir. 2014); *see also Thomas v. JBS Green Bay, Inc.,* 120 F.4th 1335, 1336–37 (7th Cir. 2024) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)) ("All the complaint need do is state a grievance. Details and proofs come later."). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson,* 758 F.3d at 827 (citation omitted). The complaint plainly states that Plaintiff, a Black man, was subjected to adverse action, including "selective audits, heightened scrutiny, withholding of evaluation standards, mischaracterization of conduct, and denial of tenure" (Doc. 9 at 4), and provides a basis to plausibly infer those actions were connected to his race. Thus, Plaintiff has satisfied Rule 8(a)'s pleading requirements.

### D. Retaliation

Plaintiff also brings a claim for retaliation under Title VII. *See* 42 U.S.C. § 2000e-3(a). "To state a claim for Title VII retaliation, a plaintiff must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity." *Hatcher v. Bd. of Trs. of S. Ill. Univ.,* 829 F.3d 531, 536 (7th Cir. 2016) (citing *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 57 (2006)).

### i.    Materially Adverse Actions

LLCC argues Plaintiff did not suffer any materially adverse action because he did not adequately plead a "constructive discharge." In the retaliation context, "[t]o determine if an action is 'materially adverse,' [courts] ask whether the action would dissuade a reasonable worker from making or supporting a charge of discrimination." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010); *see also Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). Plaintiff alleged "[a] reasonable faculty member in [his] position would have concluded that resignation was the only viable option" (Doc. 9 at ¶ 30), leading to his own constructive discharge, but he also contends he was denied tenure. (*Id.* at ¶ 26). And denial of tenure is certainly a materially adverse action. *Hatcher*, 829 F.3d at 538. Indeed, a "tangible employment action" is the "quintessential example of an adverse action." *Chapin*, 621 F.3d at 678 (citations omitted).

The Seventh Circuit recognizes two forms of constructive discharge: an employee's resignation due to 1) discriminatory harassment "more egregious than that required for a hostile work environment claim," or 2) acts from an employer that communicate "to a reasonable employee that she will be terminated." *Id.* at 679. Neither form "dispenses with the requirement that the work environment had become intolerable." *Id.* (citing *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Here, Plaintiff relies on conclusory allegations that his continued employment was "objectively unreasonable" and "resignation was the only viable option." (Doc. 9 at ¶¶ 28–30). He alleges his constructive resignation was based on his "denial of tenure, combined with

selective scrutiny, reputational harm, and the communicated futility of further probationary remediation." (*Id.* at ¶ 29). But the totality of these alleged circumstances—putting aside their need for factual detail—does not "indicate that a firing here was an imminent and inevitable event," nor that the conditions of Plaintiff's work environment were so intolerable that he was forced to quit. *Chapin*, 621 F.3d at 679–80. Therefore, Plaintiff has not alleged a constructive discharge.

### ii.　Protected Activity

As for Plaintiff's alleged retaliatory denial of tenure at the College, LLCC argues he did not engage in protected activity. The complaint alleges:

> Plaintiff raised internal concerns regarding inequitable treatment, lack of transparency, and selective scrutiny in his evaluation and tenure process.
>
> On October 16, 2023, during a meeting attended by Plaintiff, his union representative, Kalith Smith, Dean of Social Sciences and Business, and Jason Docktor, Vice President of Academic Services, Plaintiff stated that he believed the treatment he was experiencing was occurring because he is a Black man and because his questioning of evaluation practices was perceived as challenging authority.
>
> Plaintiff's statements constituted protected activity under Title VII.

(Doc. 9 at ¶¶ 19–21). LLCC seeks dismissal because "Plaintiff cannot unilaterally determine the legal significance of his statements ["during a single meeting"] and such legal conclusion cannot be considered in determining the sufficiency of the claim." (Doc. 10 at 7). The Court disagrees.

"Protected activity for the purposes of a Title VII retaliation claim is some step in opposition to a form of discrimination that the statute prohibits." *Alley v. Penguin Random*

*House*, 62 F.4th 358, 365 (7th Cir. 2023) (internal quotation marks omitted). "This only requires an employee to have a good-faith and *reasonable* belief that they are opposing unlawful conduct." *Id.* (internal quotation marks omitted). Here, Plaintiff adequately alleged he engaged in protected activity when he alerted the Dean of Social Sciences and Business and the Vice President of Academic Services—in the presence of his union representative—to his concerns about racial discrimination. Therefore, Plaintiff sufficiently alleged he engaged in protected activity.

### iii.   Causal Connection

In order to proceed, Plaintiff must be able to causally connect his engagement in in protected activity to his denial of tenure. *Volling v. Kurtz Paramedic Servs.*, 840 F.3d 378, 383, 385 (7th Cir. 2016); *see also Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that "traditional principles of but-for causation" apply to Title VII retaliation claims). In this regard, under a "Retaliation and Causation" heading, Plaintiff states:

> Following Plaintiff's protected activity, promised follow-up meetings did not occur, administrative scrutiny intensified, and LLCC denied Plaintiff tenure.
>
> The decision to deny tenure relied entirely on Plaintiff's online teaching, despite the limited number of written evaluations and Plaintiff's repeated efforts to obtain guidance and improve.
>
> The denial of tenure occurred shortly after Plaintiff's protected activity and followed an immediate shift in administrative behavior, including intensified scrutiny and abandonment of promised remedial meetings.
>
> No intervening performance deficiencies were identified, and the stated reasons for denial were inconsistent with prior evaluations and

contemporaneous acknowledgments, supporting a plausible inference of retaliatory causation.

(Doc. 9 at ¶¶ 22–25).

LLCC argues the allegations "fail[] to identify any individuals or administrators within Defendant's staff who were involved in the alleged retaliatory conduct to allow Defendant to be in a position to understand and respond to the allegations against it." (Doc. 11 at 7). However, notice pleading does not require the plaintiff to identify all facts supporting his claim, especially when those facts are in the control of the defendant or are easily ascertainable. *See, e.g.*, *Carlson*, 758 F.3d at 827; *EEOC v. Concentra Health Servs.*, 496 F.3d 779–80 (7th Cir. 2007) (discussing notice pleading). Plaintiff's allegations stating explicitly who attended the October 16, 2023 meeting where the protected activity occurred provides Defendant with sufficient notice of his claims and the basis for said claims. (Doc. 9 at ¶ 20).

LLCC argues Plaintiff's allegation that "[t]he decision to deny tenure relied entirely on Plaintiff's online teaching" "undermines any causal connection between the alleged protected activity and the alleged adverse action, and creates confusion regarding the factual and legal basis of the claim." (Doc. 11 at 7). Given Plaintiff's *pro se* status and the procedural posture of the case, the Court finds the basis for Plaintiff's retaliation claim is readily apparent and provides sufficient notice to survive the modest scrutiny of LLCC's motion to dismiss. *Cf. Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (citing *Twombly*, 550 U.S. at 555; *Concentra Health Servs.*, 496 F.3d at 781–82) (finding complaint stated claim where it alleged, "Since Plaintiff began to complain about her lack

of equal pay and filing her charge of discrimination with the EEOC, Plaintiff has been subjected to adverse employment actions by Defendants in retaliation for her complaints," and then listed several adverse actions).

Plaintiff contends that instead of LLCC relying on Plaintiff's performance deficiencies—indeed, no "deficiencies were identified"—their decision was allegedly based on reasons "inconsistent with prior evaluations and contemporaneous acknowledgments" related to Plaintiff's online teaching. (Doc. 9 at ¶¶ 23, 25). And, according to the allegations, "[t]he denial of tenure occurred shortly after Plaintiff's protected activity and followed an immediate shift in administrative behavior." (*Id.* at ¶ 24). Plaintiff therefore contends these circumstances support "a plausible inference of retaliatory causation" and "would not have occurred but for Plaintiff's complaints." (*Id.* at ¶ 25, p. 4). Accordingly, Plaintiff has stated a claim for retaliation based on his denial of tenure.

## II.    CONCLUSION

Based on the foregoing reasons, Defendant Lincoln Land Community College's Motion to Dismiss (Doc. 10) is GRANTED in part and DENIED in part. Plaintiff Alonzo C. DeCarlo's First Amended Complaint (Doc. 9) is DISMISSED without prejudice. Plaintiff is granted leave to file a Second Amended Complaint within 21 days of the entry of this Order to cure the deficiencies addressed in this Opinion. Failure to do so within 21 days may result in dismissal of the case with prejudice.

ENTER: April 15, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE